UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSA AGUILAR-PEREZ,<br><br>  Petitioner,<br><br>v.<br><br>CHRISTOPHER J. LAROSE, Warden of Otay Mesa Detention Center, et al.,<br><br>  Respondents. | Case No.: 25cv3409-LL-DDL<br><br>**ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS**<br><br>**[ECF No. 1]** |

This case comes before the Court on Petitioner's 28 U.S.C. § 2241 Petition. ECF No. 1. The Court already granted in part Petitioner's ex parte motion for a temporary restraining order ("TRO"). ECF Nos. 3, 9. Specifically, on December 22, 2025, the Court ordered Respondents to arrange an individualized bond hearing for Petitioner before an immigration court within seven (7) days of that Order. ECF No. 9. On January 5, 2026, the parties filed a Joint Status Update, and informed the Court that the parties "presently disagree as to whether the habeas petition is resolved." ECF No. 10 (hereinafter "Status Update").

Specifically, Petitioner's position is:

> Petitioner has been detained for over two months following her arrest at a routine ICE check-in, despite having lived openly in the community for more than a decade after being released by DHA on her own recognizance under 8

U.S.C. § 1226(a). From 2014 until her re-detention in October 2025, Petitioner complied perfectly with ICE supervision, appeared at every required check-in, maintained stable employment and residence, supported her family, and incurred no additional criminal history.

After this Court granted limited TRO relief, an Immigration Judge conducted a bond hearing. The Immigration Judge denied bond, relying exclusively on Petitioner's 2014 conviction as evidence of dangerousness. That conviction, however, is the same incident that first brought Petitioner to the attention of immigration authorities more than ten years ago and was fully known to DHS at the time it affirmatively released her on her own recognizance. The Immigration Judge did not identify any conduct, event, or circumstance occurring after that release that would justify revocation of Petitioner's longstanding recognizance or a departure from DHS's prior determination that she did not pose a danger or flight risk.

Petitioner respectfully submits that the bond denial rests on a legal error: the absence of changed circumstances supports continuation of release, not continued detention. The Immigration Judge's finding that Petitioner failed to demonstrate changed circumstances improperly inverted the governing standard, where DHS bore the burden of identifying new, individualized justification for detention following a decade of compliant release.

Petitioner therefore maintains that her continued detention remains unlawful under the Due Process Clause and inconsistent with the statutory framework governing § 1226(a) custody. The habeas petition and TRO motion remain pending, and Petitioner continues to seek release or other appropriate relief consistent with the Court's prior order and constitutional requirements.

*Id.* at 1-2.

Respondent's position is as follows:

[The] Court's order has been complied with, Petitioner's habeas petition is resolved and that there are no further requests for relief that the Court can resolve or grant in this matter. *See* 8 U.S.C. § 2241(c) (An individual may seek habeas relief under 28 U.S.C. § 2241 if he is "in custody" under federal authority "in violation of the Constitution or laws or treaties of the United States."); 8 U.S.C. § 1252; *Pinson v. Carvajal*, 69 F.4th 1059, 1072 (9th Cir. 2023) ("[O]ur review of the history and purpose of habeas leads us to conclude the relevant question is whether, based on the allegations in the petition, release is *legally required* irrespective of the relief requested."); *Crawford v.*

2

*Bell*, 599 F.2d 890, 891 (9th Cir. 1979); *Dep't of Homeland Security v. Thraissigiam*, 591 U.S. 103, 117 (2020) (The writ of habeas corpus historically "provide[s] a means of contesting the lawfulness of restraint and securing release."). Petitioner was provided with an individualized bond hearing pursuant to § 1226(a), although it did not result in the outcome Petitioner was hoping for. Should Petitioner wish to seek review of the IJ's bond determination, she should file an appeal with the Board of Immigration Appeals.

*Id.* The Court agrees with Respondents that should Petitioner wish to seek review of the IJ's bond determination, she should file an appeal with the Board of Immigration Appeals. However, Respondents fail to address that the Court has not yet ruled on the other issues raised in Petitioner's Petition for Writ of Habeas Corpus including her claim that her detention violates the Fifth Amendment Due Process Clause and the Administrative Procedures Act. Pet. ¶¶ 79-96. The Court will address these claims herein, and for the reasons set forth below, the Court **GRANTS IN PART** Petitioner's Petition for Habeas Corpus.

I.  BACKGROUND

Petitioner, a native and citizen of Mexico, entered the United States at or near San Ysidoro, California on or about January 1, 1992, when she was fourteen years old, without being admitted or paroled. Pet. ¶ 19. She is now a 53-year old mother of three U.S. children, and has resided continuously in the U.S. for more than thirty-five years. *Id.* She has worked both in the family business and as a primary caregiver and homemaker for her three children. *Id.* ¶¶ 21-23. She has been married to her husband, Miguel A. Perez Gonzalez, a lawful permanent resident, who has a janitorial business. *Id.* ¶ 23.

In 2014, Petitioner was served with a Notice to Appear following a traffic-related incident, which she alleges she accepted responsibility in the California-court system. *Id.* ¶ 24. Although DHS executed an arrest warrant on December 10, 2014, the agency issued a Notice of Custody Determination releasing her on her own recognizance, without bond. *Id.* ¶ 25. Petitioner has had no other criminal or other incidents during her time in the U.S. *Id.* ¶ 26. Also, for the past six years, Petitioner has maintained steady, long-term

3

employment with DMSD Foods, which allows her to contribute materially to her household and to support her three children. *Id*. In October 2025, at her routine ICE check-in, Petitioner was arrested and taken into custody where she remains today. *Id.* ¶¶ 27-28. She received no warning or indication that she would be taken into custody. *Id.* Petitioner now argues her detention without notice or an opportunity to be heard violates the Due Process Clause and the Administrative Procedure Act. *Id.* at ¶¶ 56-73.

## II. LEGAL STANDARD

A federal prisoner challenging the execution of his or her sentence, rather than the legality of the sentence itself, may file a petition for writ of habeas corpus in the district of his confinement pursuant to 28 U.S.C. § 2241. *See* 28 U.S.C. § 2241(a). The sole judicial body able to review challenges to final orders of deportation, exclusion, or removal is the court of appeals. *See generally* 8 U.S.C. § 1252; *see also Alvarez–Barajas v. Gonzales*, 418 F.3d 1050, 1052 (9th Cir. 2005) (citing REAL ID Act, Pub. L. No. 109-13, 119 Stat. 231, § 106(a)). However, for claims challenging ancillary or collateral issues arising independently from the removal process—for example, a claim of indefinite detention—federal habeas corpus jurisdiction remains in the district court. *Nadarajah v. Gonzales*, 443 F.3d 1069, 1076 (9th Cir. 2006), *abrogated on other grounds by Jennings v. Rodriguez*, 138 S. Ct. 830 (2018); *Alvarez v. Sessions*, 338 F. Supp. 3d 1042, 1048–49 (N.D. Cal. 2018) (citations omitted).

## III. DISCUSSION

### A. Jurisdiction

Respondents argue that this Court lacks jurisdiction under 8 U.S.C. § 1252(g). Response at 7-10. Section 1252(g) provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g). Respondents argue that Petitioner's claims arise from DHS's decision to commence removal proceedings. Response at 10. The Court disagrees.

Section 1252(g) should be read "narrowly" as to apply "only to three discrete actions that the Attorney General may take: her 'decision or action' to 'commence proceedings, adjudicate cases, or execute removal orders.'" *Ibarra-Perez v. United States*, No. 24-631, 2025 WL 2461663, at *6 (9th Cir. Aug. 27, 2025) (quoting *Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471, 482, 487 (1999)). Section 1252(g) "does not prohibit challenges to unlawful practices merely because they are in some fashion connected to removal orders." *Id.* at *7. Section 1252(g) does not bar due process claims. *Walters v. Reno*, 145 F.3d 1032, 1052–53 (9th Cir. 1998) (finding that the petitioners' objective was not to review the merits of their proceeding, but rather "to enforce their constitutional rights to due process in the context of those proceedings").

Section 1252(b)(9) provides that "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, *arising from any action taken or proceeding brought to remove an alien from the United States* under this subchapter shall be available only in judicial review of a final order under this section." 8 U.S.C. § 1252(b)(9) (emphasis added). Respondents argue that the Court lacks jurisdiction under § 1252(b)(9) because "[t]hese provisions divest district courts of jurisdiction to review both direct and indirect challenges to removal orders, including decisions to detain for purposes of removal or for proceedings." Response at 9 (citing *Jennings*, 583 U.S. 294–95). Again, the Court disagrees.

Section 1252(b)(9) "has built-in limits, specifically, claims that are independent of or collateral to the removal process do not fall within the scope" of § 1252(b)(9). *Gonzalez v. United States Immigration and Customs Enforcement*, 975 F.3d 788, 810 (9th Cir. 2020) (citing *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1032 (9th Cir. 2016) (internal quotation marks omitted)). "[C]laims challenging the legality of detention pursuant to an immigration detainer are independent of the removal process." *Id.*; *see also Garcia v. Noem*, 2025 WL 2549431, at *3–4 (S.D. Cal. Sept. 3, 2025); *Nielson v. Preap*, 586 U.S. 392, 402 (2019) (quoting *Jennings*, 583 U.S. at 294) (finding § 1252(b)(9) did not strip the court of jurisdiction because the petitioners were "not asking for review of an order of removal;

they [were] not challenging the decision to detain them in the first place or to seek removal (as opposed to decision to deny them bond hearings); and they [were] not even challenging any part of the process by which their removability w[ould] be determined").

Here, as discussed above, Petitioner is not challenging the Department of Homeland Security's decision to commence removal proceedings or to adjudicate removability. Petitioner is instead challenging the ICE's abrupt re-detention "without notice, explanation, and without identifying a single changed circumstance," which she alleges violates her due process rights and the Administrative Procedures Act as a parolee. Pet. ¶¶ 2, 4, 5. Therefore, § 1252(b)(9) also does not strip the Court of jurisdiction.

**B.     Due Process**

Petitioner argues that the summary revocation of her parole without notice or a hearing violates the Due Process Clause. Pet. ¶¶ 27, 57, 79-85. The Court agrees.

The Fifth Amendment guarantees that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (9th Cir. 2001). "[I]t is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993). The Due Process Clause generally "requires some kind of a hearing before the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, No. 25-cv-5632-PCP, 2025 WL 2084921, at *3 (N.D. Cal. July 25, 2025) (citations omitted). Although the initial decision to detain or release an individual may be within the government's discretion, "the government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[] to live up to the . . . conditions [of release].'" *Id.* (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)).

1  "Thus, even when ICE has the initial discretion to detain or release a noncitizen pending
2  removal proceedings, after that individual is released from custody [he] has a protected
3  liberty interest in remaining out of custody." *Pinchi*, 2025 WL 2084921, at *3 (citing
4  *Romero v. Kaiser*, No. 22-cv-20508, 2022 WL 1443250, at *2 (N.D. Cal. May 6, 2022)).

5  Respondents originally filed a Response in opposition to the Petition on December
6  15, 2025, and then on December 19, 2025, Respondents filed a Supplemental Response
7  conceding that in light of *Maldonado Bautista*, Petitioner is detained under 8 U.S.C. §
8  1226(a) and is entitled to a bond hearing. *See* ECF Nos. 7, 8. On December 22, 2025, the
9  Court granted in Part Petitioner's Ex Parte Motion for a Temporary Restraining Order, and
10 ordered Respondents to arrange an individualized bond hearing for Petitioner within seven
11 days of the Court's Order. ECF No. 9. Based on the parties' Joint Status Update, a bond
12 hearing was held pursuant to the Court's Order on the TRO, but bond was denied. ECF No.
13 10. However, in now ruling herein on the Petition and the remaining claims for due process
14 and the Administrative Procedures Act, the Court finds that the relief Petitioner is entitled
15 to is not limited to a bond hearing. Prior to Petitioner being granted parole, she was
16 determined to not be a danger to the community or a flight risk and was released. Pet. ¶¶
17 39, 51. Petitioner has complied with all conditions of her release. *Id.* Petitioner has
18 maintained steady employment and developed community ties including three U.S. citizen
19 children and a legal permanent resident husband. *Id.* Accordingly, Petitioner has a
20 protected liberty interest in remaining out of custody. *See, e.g.*, *Pinchi*, 2025 WL 2084921,
21 at *4 ("[Petitioner's] release from ICE custody after her initial apprehension reflected a
22 determination by the government that she was neither a flight risk nor a danger to the
23 community, and [Petitioner] has a strong interest in remaining at liberty unless she no
24 longer meets those criteria."); *Noori v. LaRose*, 2025 WL 2800149, at *10 (S.D. Cal. Oct.
25 1, 2025) ("Petitioner is not an 'arriving' noncitizen but one that has [been] present in our
26 country for over a year. This substantial amount of time indicates he is afforded the Fifth
27 Amendment's guaranteed due process before removal."); *Matute v. Wofford*, No. 25-cv-
28

1206-KES-SKO (HC), 2025 WL 2817795, at *5 (E.D. Cal. Oct. 3, 2025) (finding petitioner had a protected liberty interest in his release).

As Petitioner has a protected liberty interest, the Due Process Clause requires procedural protections before she can be deprived of that interest. *See Matthews v. Eldridge*, 424 U.S. 319, 335 (1976). To determine which procedures are constitutionally sufficient to satisfy the Due Process Clause, the Court must apply the *Matthews* factors. *See Matthews*, 424 U.S. at 335. Courts must consider: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the [g]overnment's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.*

The Court finds that all three factors support a finding that the government's revocation of Petitioner's parole without notification, reasoning, or an opportunity to be heard, denied Petitioner of her due process rights. First, as discussed above, Petitioner has a significant liberty interest in remaining out of custody pursuant to her parole. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." *Zadvydas*, 533 U.S. at 690. Petitioner has an interest in remaining with her community, working, and continuing to provide for her three U.S. citizen children. *See Morrissey*, 408 U.S. 471 at 482 ("Subject to the conditions of his parole, he can be gainfully employed and is free to be with family and friends and to form the other enduring attachments of normal life.").

Second, the risk of an erroneous deprivation of such interest is high as Petitioner's parole was revoked without providing her a reason for revocation or giving her an opportunity to be heard. Pet. ¶¶ 39, 51. Since the initial determination that Petitioner should be paroled because she posed no danger to the community and was not a flight risk, there is no evidence that these findings have changed. *See Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1760 (N.D. Cal. 2017) ("Release reflects a determination by the

government that the noncitizen is not a danger to the community or a flight risk."). Petitioner has no criminal record, has not been arrested or otherwise in criminal trouble, has an established community, and is working in gainful employment. Pet. ¶¶ 21-23, 26. "Once a noncitizen has been released, the law prohibits federal agents from rearresting him merely because he is subject to removal proceedings." *Saravia*, 280 F. Supp. 3d at 1760. "Rather, the federal agents must be able to present evidence of materially changed circumstances—namely, evidence that the noncitizen is in fact dangerous or has become a flight risk. . . ." *Id.* Respondents fail to address Petitioner's Due Process argument in their Response, and do not point to any material circumstances that have changed that would warrant reconsideration of her parole. *See generally* Response.

Third, the government's interest in detaining Petitioner without notice, reasoning, and a hearing is "low." *See Pinchi*, 2025 WL 2084921, at *5; *Matute*, 2025 WL 2817795, at *6; *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. Nov. 22, 2019) ("If the government wishes to re-arrest [Petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low."). Respondents fail to point to any burdens on the government if it were to have provided proper notice, reasoning, and a pre-deprivation hearing. *See generally* Response.

Therefore, because Respondents detained Petitioner by revoking her parole in violation of the Due Process Clause, her detention is unlawful. *See, e.g.*, *Alegria Palma v. Larose et al.*, No. 25-cv-1942 BJC (MMP), slip op. at 14 (S.D. Cal. Aug. 11, 2025) (granting a TRO based on a procedural due process challenge to a revocation of parole without a pre-deprivation hearing); *Navarro Sanchez v. LaRose*, 2025 WL 2770629, at *5 (S.D. Cal. Sept. 26, 2025) (granting a writ of habeas corpus releasing petitioner from custody to the conditions of her preexisting parole on due process grounds).

### C. Administrative Procedure Act ("APA")

Petitioner argues that Respondents' conduct also violates the APA. Pet. ¶¶ 86-96. The Court agrees.

The APA requires courts to hold challenged final agency actions unlawful when the actions are "arbitrary, capricious, and abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Agency action is arbitrary and capricious when the agency fails to "examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins.*, 463 U.S. 29, 43 (1983) (quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962)). When an agency changes its policies, it also "must be cognizant that longstanding policies may have engendered serious reliance interests that must be taken into account." *Dept. of Homeland Security v. Regents of the Univ. of Calif.*, 591 U.S. 1, 30 (2020) (internal quotations and citations omitted). A government agency terminating an alien's status is subject to review under the APA as a final agency action when the termination has lasting consequences that would not be cured even if the agency reinstated status through its internal processes. *Jie Fang v. Dir. U.S. Immigr. & Customs Enf't*, 935 F.3d 172, 183 (3rd Cir. 2019); *Doe v. Noem*, 778 F.Supp.3d 1151, 1159 (W.D. Wash. April 17, 2025).

Here, given Respondent's position that Petitioner is inadmissible and in removal proceedings (ECF No. 7 at 2), their termination of her parole status is reviewable as a final agency action that will have lasting incurable consequences. The record here shows that before Petitioner was arrested and detained in October 2025, DHS did not articulate a satisfactory explanation including a "rational connection between the facts found and choice made" for the change to Petitioner's status. *See Motor Vehicle Mfrs. Ass'n.*, 463 U.S. at 43. In fact, Respondents do not state any reasons for the revocation of Petitioner's parole based on any individualized facts about her case in their Response at all. *See* Response. Because Respondents revoked Petitioner's parole and detained her without any rational individualized fact-finding, Respondents acted arbitrarily and capriciously in violation of the APA. *See, e.g., Navarro Sanchez*, 2025 WL 2770629, at *4 (finding revocation of petitioner's parole arbitrary and capricious because respondents did not state any reasons for the revocation); *Noori*, 2025 WL 2800149, at *3 ("Petitioner's parole was

revoked without an individualized determination or provided reasoning, which violated the APA.").

Respondents' violation of the APA in their decision to revoke Petitioner's parole and detain her with no notice or reasoning constitutes adequate and independent grounds by which her confinement is unlawful. This Court also **GRANTS** Petitioner's Petition on this basis.

## IV.  CONCLUSION

Based on the foregoing, the Court **GRANTS IN PART** Petitioner's Petition for Writ of Habeas Corpus (ECF No. 1), and **ORDERS** Respondents to immediately release Petitioner from custody subject to the conditions of her preexisting parole. The Court **ORDERS**, prior to any re-detention of Petitioner, that Petitioner is entitled to notice of the reasons for revocation of her parole and a hearing before a neutral decision maker to determine whether detention is warranted. The government shall bear the burden of establishing, by clear and convincing evidence, that Petitioner poses a danger to the community or a risk of flight. The Parties are **ORDERED** to file a Joint Status Report by **January 16, 2026**, confirming that Petitioner has been released.

**IT IS SO ORDERED.**

Dated:  January 13, 2026

_____
Honorable Linda Lopez
United States District Judge